1   Brian P. Kinder (212332)
2   THE KINDER LAW GROUP, APC
    19200 Von Karman Avenue, Fourth Floor
3   Irvine, California 92612
    Telephone:    (949) 216-3070
4   Facsimile:    (949) 216-3074
    Email:        bkinder@tklglaw.com

5   Orlando J. Castaño, Jr. (162704)
6   LAW OFFICES OF ORLANDO J. CASTAÑO, JR., INC.
    425 30TH Street, Suite #31
7   Newport Beach, CA 92663
    Telephone:    (714) 225-2781
8   Facsimile:    (949) 332-1117
    Email:        ojclaw@aol.com

9   Attorneys for Plaintiff

10

11                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

12          FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

13

14

15  THE M.I.B. GROUP, LLC, a California      )   Case No.: 5:23-cv-1597
    limited liability company,               )
16                                           )   **COMPLAINT FOR:**
            Plaintiff,                        )
17                                           )   1.   Federal Trademark Infringement (15
        vs.                                   )        U.S.C. § 1114);
18                                           )   2.   Federal Unfair Competition (15 U.S.C. §
                                             )        1125);
19  STEVEN R. AGUILAR, an individual;        )   3.   Common Law Trademark Infringement;
    MIB-SHIELD LLC, a Nevada limited         )   4.   Cyber Piracy in Violation of 15 U.S.C. §
20  liability company; and DOES 1 through    )        1125 (d);
    10, inclusive,                           )   5.   Common Law Unfair Competition;
21                                           )   6.   Violation of Cal. Bus. & Prof Code §
            Defendants.                       )        17500; and
22                                           )   7.   Violation of Cal. Bus & Prof Code §
                                             )        17200.
23                                           )
                                             )
24                                           )

25

26

27

28

Plaintiff THE M.I.B. GROUP, LLC. ("**Plaintiff**"), for its Complaint against Steven R. Aguilar ("**Defendant Aguilar**") and MIB-SHIELD LLC ("**Defendant SHIELD**") (Defendant Aguilar and Defendant SHIELD are collectively referred to herein as "**Defendants**"), hereby alleges as follows:

<u>**NATURE OF ACTION**</u>

1.     Plaintiff seeks injunctive and monetary relief (including damages, profits, punitive damages, attorneys fees, prejudgment interests and costs) from Defendants for their acts of unfair competition, trademark infringement and cyber piracy. Defendants are promoting and selling services in the United States that infringe on one or more of Plaintiff's common law and federally-registered trademarks. Defendants have also hijacked ownership of Plaintiff's domain name www.mibsecuritygroup.com in bad faith using fraudulent and deceptive practices as explained herein. Defendants' actions constitute unfair competition, cyberpiracy and trademark infringement and are likely to cause confusion in the marketplace.

2.     Defendant's conduct, alleged more fully below, violates the Trademark Act of 1946 as amended, 15 U.S.C. §§ 1125, et seq. (the "Lanham Act"), California law, and substantially harms Plaintiff's goodwill in and to Plaintiff's trademarks.

<u>**PARTIES**</u>

3.     Plaintiff is a limited liability company organized under the laws of California and having a principal place of business at 3410 La Sierra Avenue, F534, Riverside, CA 92503. Plaintiff is in the security and training services business.

4.     Defendant Aguilar is an individual residing at 7901 Sargent Ave, Whittier, CA 90607, County of Los Angeles.

5.     Defendant SHIELD is a limited liability company organized under the laws of Nevada with a principal place of business at 8520 Michigan Ave, Unit 4385 Whittier, CA 90607, County of Los Angeles.  Defendant Aguilar is the sole owner and managing member of Defendant SHIELD and, as such, is responsible for controlling the actions of the entity.

6.     The true names and capacities of Defendant DOES 1 through 10, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs who therefore



COMPLAINT

sue such Defendants by such fictitious names.  Plaintiffs will seek leave of this Court to amend this Complaint to show said Defendants' true names and capacities when same have been ascertained.

7.      Plaintiff is informed and believes and upon such information and belief alleges that each of the Defendants named herein as DOES 1 through 10, inclusive, were, and are in some manner responsible for the actions, acts, and omissions herein alleged, and for the damage caused by the Defendants and are, therefore, jointly and severally liable for the damages caused to Plaintiffs.

8.      Plaintiff is informed and believes and upon such information and belief alleges that at all times mentioned herein, Defendants, and each of them, were the agents, employees, and officers of each of the remaining Defendants and in doing the things herein alleged, were acting within the scope, course, and purpose of said agency or employment, and with permission and consent of each of the remaining Defendants.

9.      Plaintiff is informed and believes and upon such information and belief alleges that each of the Defendants, including DOES 1 through 10, inclusive, were, and at all times herein mentioned, acting in concert and in conspiracy with each and every one of the named Defendants.

## **JURISDICTION**

10.      This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has pendant and supplemental jurisdiction over all related claims pursuant to 28 U.S.C. §1367.  Plaintiff has proper standing to maintain this complaint against Defendants.

11.      This Court has personal jurisdiction over Defendant Aguilar because he resides and conducts business in the State of California, thereby purposefully availing himself of the privilege of acting in the State of California.

12.      This Court has personal jurisdiction over Defendant SHIELD because it has its principal place of business in the State of California, regularly conducts business activities, including advertising and offering services in this State and in the counties of Los Angeles,

Orange, Riverside and San Bernardino Counties, thereby purposefully availing itself of the privilege of acting and conducting business in the State of California.

## VENUE

13.     This action arises out of the transaction of business and other activities of Defendants within the Central District of California and threatened and actual harm to Plaintiff in this judicial district by reason of Defendants' conduct alleged herein.  Defendants regularly conduct and solicit business, engage in other forms of conduct, and derive revenue from doing business in this judicial district.  Further, Plaintiff conducts business, and performs services in this judicial district, and a substantial part of the events or omissions giving rise to the claims is occurring in this judicial district.  Accordingly, venue is proper in this district under 28 U.S.C. §§ 1391(a)(2), (b) and (c) as well as 28 U.S.C. §§ 1400(a) and (b).

## THE MIB MARKS

14.     For over two decades, Plaintiff has continuously provided, among other services, security guard services, security protection services, security threat analysis, background investigations, firearm training, firearm certification and security guard certification services throughout California.  Since at least as early as January 2, 2002, Plaintiff has provided the foregoing services under and in connection with the trademarks M.I.B. SECURITY GROUP™, M.I.B. GROUP™, MIB EXECUTIVE PROTECTION™, and MIB INVESTIGATIONS™, among others.

15.     By continuously using the above trademarks, Plaintiff has garnered substantial common law rights and goodwill and enjoys a reputation for being one of the top and longest, continuously-operating security companies in California.

16.     In 2021, Plaintiff also took the precaution of applying to register the M.I.B. SECURITY GROUP™ and M.I.B. GROUP™ trademarks with the U.S. Patent and Trademark Office. As a result, Plaintiff is the owner of the following valid and existing U.S. trademark registrations:

COMPLAINT

| MARK | REG. NO. REG. DATE | GOODS/SERVICES | EX. |
|---|---|---|---|
| M.I.B. SECURITY GROUP | 6,814,995 Aug. 9, 2022 | Training in the use of Firearms (Class 41); and Conducting personal security clearance background investigations; Personal security consultation; Security services, namely, providing executive protection; Security Threat analysis for protecting personal safety (Class 45) | A |
|  | 6,812,698 Aug. 9, 2022 | Training in the use of Firearms (Class 41); and Conducting personal security clearance background investigations; Personal security consultation; Security services, namely, providing executive protection; Security Threat analysis for protecting personal safety (Class 45) | B |

17.     True and correct copies of the Official Certificates of Registration from the U.S. Patent and Trademark Office for the MIB SECURITY GROUP® and MIB GROUP® trademarks are attached hereto at the Exhibits corresponding to the table above.

18.     Each of the registrations is valid, subsisting, and constitutes prima facie evidence of the validity thereof, Plaintiff's ownership and exclusive right to use the marks in commerce, and provides constructive notice of Plaintiff's ownership, as provided by §§ 7(b) and 22 of the Federal Trademark Act of 1946, as amended.  Hereinafter, Plaintiff's common law trademarks and federally-registered trademarks will be collectively referred to as "The MIB® Marks."

19.     As a result of Plaintiff's promotion and sale of services, The MIB® Marks have gained significant recognition and goodwill among the relevant consuming public. The MIB® Marks are non-functional and inherently distinctive with respect to Plaintiff's services.  The consuming public relies upon The MIB® Marks to distinguish and identify Plaintiff's services.

## BACKGROUND INFORMATION

20.     Mr. Tyrone Wilkerson ("**Mr. Wilkerson**") is the sole owner and managing member of the limited liability company (i.e., Plaintiff The M.I.B Group, LLC) that uses and owns The MIB® Marks.  Mr. Wilkerson formed The M.I.B Group, LLC on August 4, 2015, and has continuously owned and operated the company from the date of formation through to the present. A true and correct copy of the Articles of Organization for The M.I.B Group, LLC

are attached hereto as **Exhibit C**.

21.    Prior to The M.I.B Group, LLC, the predecessor owner of The MIB® Marks is Mr. Wilkerson himself who continuously used and owned The MIB® Marks as a sole proprietor from on or about 2011 until the formation of The M.I.B Group, LLC on August 4, 2015.

22.    Prior to Mr. Wilkerson as a sole proprietor, the predecessor owner of The MIB® Marks is California corporation M.I.B. 2nd II None, Inc. which was also exclusively owned and continuously operated by Mr. Wilkerson from the date the company was formed on July 18, 2006 until the time when Mr. Wilkerson began operating as a sole proprietor in or around 2011.  A true and correct copy of the Articles of Incorporation for M.I.B. 2nd II None Inc. are attached hereto as **Exhibit D**.

23.    Prior to M.I.B. 2nd II None Inc., the predecessor owner of The MIB® Marks is California corporation M.I.B. 220, INC. which was also exclusively owned and continuously operated by Mr. Wilkerson from the date the company was formed on October 12, 2001 until the time when Mr. Wilkerson formed M.I.B. 2nd II None Inc. in 2006. A true and correct copy of the Articles of Incorporation for M.I.B. 220, INC. are attached hereto as **Exhibit E**.

24.    The industry in which Plaintiff operates and provides services is regulated by The California Bureau of Security Investigative and Services (BSIS). Providing services like those provided by Plaintiff requires that the BSIS issue licenses for the various types of security, investigative and training services.  The licenses bear unique license numbers and identify the individual(s) and/or business names corresponding to the license.

25.    In order to operate a security company that protects persons or property or prevents theft, you must have a license from BSIS to operate as a Private Patrol Operator or "PPO" and each applicant or officer must meet the following requirements: (i) be 18 or older, (ii) undergo a criminal history background check through the California Department of Justice (DOJ) and Federal Bureau of Investigation (FBI); and (iii) have committed no offense or violation of the Private Security Services Act that would be grounds for license suspension or revocation.

26.     In addition to the foregoing, a PPO must have a Qualified Manager ("QM") who is licensed and meets requirements (i)-(iii) above as well as: (iv) have one year of experience (2,000 hours) as a patrolperson, guard, or watchperson, or the equivalent; (v) pass a two-hour multiple-choice examination covering the Private Security Services Act and other rules and regulations, business knowledge, emergency procedures, security functions, and use of deadly weapons; and (vi) submit a completed application with two recent passport-quality photographs, a $500 application and examination fee and a Private Patrol Operator Live Scan form signed by the Live Scan Operator.  Finally, a PPO who employs armed security guards must maintain $1 million in insurance.

27.     In addition to PPOs, the BSIS also issues licenses to operate training facilities for firearms (or "TFF" licenses) as well as licenses to the trainers who work at those facilities called training instructor for firearms (or "TIF" licenses).  As with PPO licenses, there are strict requirements for obtaining a TFF as well as TIF licenses from BSIS.

28.     Mr. Wilkerson first began in the security industry when he applied for and obtained a license from BSIS to provide Security Guard ("SG") services pursuant to License No. 1309098 issued April 25, 2001.  Around the same time, Mr. Wilkerson applied for and obtained a firearm permit ("FP") from BSIS pursuant to License No. 251139 issued May 2, 2001.

29.     Mr. Wilkerson worked hard and in less than a year, on January 2, 2002, applied for and obtained a license from BSIS to provide services in the nature of a Private Patrol Operator ("PPO") under the name M.I.B. Executive Protection pursuant to License No. 14442.

30.     Following issuance of PPO License No. 14442, Mr. Wilkerson, through Plaintiff's predecessor in interest, began using and has continuously used The MIB® Marks in connection with a broad range of security services.

**DEFENDANTS WRONGFUL ACTS**

31.     In or around 2008, Mr. Wilkerson decided to expand the services provided under The MIB® Marks and, in particular, decided to open a firearm training facility as well as offer private investigation services. Mr. Wilkerson began the long process of studying for and

fulfilling the qualifications to obtain both a firearm training facility ("TFF") and private investigator ("PI") license from BSIS.

32.    Around this same time, Defendant Aguilar (who had worked in law enforcement for 15 years and who was friends with Mr. Wilkerson at the time) informed Mr. Wilkerson of his intention to leave law enforcement and begin working as a private investigator.  Defendant Aguilar knew that Mr. Wilkerson, through Plaintiff's predecessors in interest, was operating as a PPO and using The MIB® Marks in connection with various security and training services.

33.    Around that time, Mr. Wilkerson shared with Defendant Aguilar his plans to expand services under The MIB® Marks by obtaining a TFF license and operating a firearm training facility.  Defendant Aguilar expressed an interest in working for Mr. Wilkerson at the facility and Mr. Wilkerson agreed and offered to hire Defendant Aguilar.

34.    On December 3, 2008, Defendant Aguilar obtained a license from BSIS to provide firearm instructor services by way of License No. 1942.  A few months later, on March 13, 2009, Defendant Aguilar obtained a license from BSIS to provide private investigator services by way of License No. 26316.

35.    Around the same time, Mr. Wilkerson fulfilled the requirements and achieved the qualifications necessary to apply for a firearm training facility license.  Mr. Wilkerson applied for and obtained TFF License No. 1231 on December 22, 2008.  In the application and the resulting TFF license, Mr. Wilkerson identified the name of the facility as the M I B Training Facility with Mr. Wilkerson identifying himself as CEO and Defendant Aguilar as Vice President.  The application and resulting license also identified the four firearm training instructors (i.e., TIF licenses) who would work at the facility as follows: (1) Mr. Wilkerson (pursuant to License No. 1965, which issued on Feb. 4, 2009  and remains current to this day); (2) Defendant Aguilar (pursuant to License No. 1942, which issued on December 3, 2008 and was subsequently revoked as set forth below); (3) Jorge Mendez (pursuant to License No. 1944, which issued on December 3, 2008 and was subsequently revoked); and (4) Erick Aguilar (pursuant to License No. 1963, which issued on January 13, 2009 and was subsequently cancelled).

COMPLAINT

36.     Within a short time of these events, Defendant Aguilar began engaging in erratic behavior. Just a few months later, on October 13, 2009, Defendant Aguilar (acting outside of his employment as a firearm trainer with Plaintiff's predecessor in interest) would engage in serious criminal conduct and be convicted of a felony.  Specifically, on July 14, 2010, in the Superior Court of California, County of Los Angeles, in Case No. NA083601, Defendant Aguilar pled nolo contendere and was convicted of violating Penal Code section 236 (false imprisonment by violence), a felony.

37.     As set forth in the October 23, 2012 Decision from the Director of BSIS adopting the August 31, 2012 Proposed Decision from Administrative Law Judge Howard W. Cohen, a true and correct copy of which is attached hereto as **Exhibit F**, the court placed Defendant Aguilar on formal probation for three years under terms and conditions including that he pay fines, assessments, and costs in the amount of $1,085 plus probation services costs to be determined, and that he perform 150 hours of community service. On July 15, 2010, the court modified the terms of probation, adding among other things that Defendant Aguilar not own, use, or possess any dangerous or deadly weapons, including firearms or knives. *See* Exhibit F, ¶ 6.

38.     Approximately two years later, on May 30, 2012, the court modified the conviction and placed Defendant Aguilar on summary probation for three years under terms and conditions including that he pay assessments and fines and that he not own or possess any dangerous or deadly weapon, nor remain in any building or vehicle where any person has such a weapon, nor remain in the presence of any armed person. *See* Exhibit F, ¶ 6.

39.     By way of the October 23, 2012 Decision from the Director of BSIS, all of Defendant Aguilar's licenses were revoked.  In particular, the Decision revoked the following licenses of Defendant Aguilar: Private Investigator ("PI") License No. 26316 issued March 13, 2009; Security Guard License No. 1254603 issued September 17, 1999; and Training Instructor for Firearms ("TIF") License No. 1942 issued December 3, 2008.  *See* Exhibit F, ¶ 2-4.

40.     Although License No. 1231 for the operation of the firearm training facility

TKLG
THE KINDER LAW GROUP

belonged to Mr. Wilkerson and Plaintiff's predecessor in interest, BSIS did not submit evidence relating to the license yet it was ultimately revoked because of the affiliation of Defendant Aguilar thereto. *See* Exhibit F, ¶ 5, fn. 2.

41.     As also set forth in the October 23, 2012 Decision from the Director of BSIS, "Defendant Aguilar worked in law enforcement for 15 years. Defendant Aguilar began working as a private investigator in 2009, but did so for less than six months before being convicted. Defendant Aguilar had wanted to conduct fraud investigations and marriage investigations, but had not yet found his niche when he committed the acts for which he was convicted. Defendant Aguilar [was, at the time] working as a real estate consultant; Defendant Aguilar [was] not working in the security field." *See* Exhibit F, ¶ 11.

42.     As a result of the foregoing, Defendant Aguilar was prohibited from engaging in any security or training services – i.e., Defendant Aguilar could not legally provide the type of services provided by Plaintiff (and Plaintiff's predecessors in interest) under and in connection with The MIB® Marks – and actually was not providing any such services throughout the period of probation and beyond.

43.     In view of the above, Mr. Wilkerson subsequently applied for and obtained various other licenses from BSIS.  Among the relevant licenses from BSIS that Mr. Wilkerson holds presently are the following:

        i.   Private Investigator ("PI") License No. 26330 issued March 27, 2009

       ii.   Training Instructor Firearm ("TIF") License No. 1965 issued Feb. 4, 2009

     iii.   Training Facility Firearm ("TFF") License No. 1494 issued January 28, 2015

     iv.   Baton Permit License No. 1533368 issued April 20, 2015

44.     Several years later, Defendant Aguilar's probation was lifted and one of his licenses was reinstated, namely Defendant Aguilar's Private Investigator ("PI") License No. 26316 which had originally issued on March 13, 2009 as indicated above.  Subsequently, Defendant Aguilar applied for and now holds the following permits and licenses from BSIS: Training Firearms Facility ("TFF") License No. 1532 issued February 24, 2017; and Private

Patrol Operator ("PPO") License No. 121046 issued December 22, 2020.

45.     On or about February 15, 2017, Defendant Aguilar also formed the limited liability company Defendant SHIELD. Defendant Aguilar is the sole owner, director and corporate officer of Defendant SHIELD and, as such, is responsible for controlling the actions thereof.

## <u>HIJACKING OF THE DOMAIN NAME</u>

46.     Back in 2008, when Mr. Wilkerson and Defendant Aguilar were still friends, and at the time when Mr. Wilkerson hired Defendant Aguilar to provide firearm training services and just a few months before Defendant Aguilar began engaging in erratic and criminal behavior, Plaintiff's predecessor in interest obtained ownership of the domain name www.mibsecuritygroup.com (hereinafter "**The Domain Name**").

47.     Plaintiff directed his employees at the time, Defendant Aguilar and Jorge Mendez, to register The Domain Name and to set up a website to appear thereon (hereinafter "**The Website**"). Plaintiff reimbursed Defendant Steve Aguilar for the costs of setting up the account and paid all of the costs for the web developer. Throughout the years, Plaintiff used The Website appearing at The Domain Name to promote the services provided by Plaintiff under and in connection with The MIB® Marks.

48.     Since at least 2008, Plaintiff owned the rights to The Domain Name which had operated to promote goods and services of Plaintiff. Both the TFF and PPO licenses identified on The Website were the licenses obtained by Mr. Wilkerson, and both Mr. Wilkerson and Defendant Aguilar were identified as private investigators as follows:

    i.    Training Facility Firearm ("TFF") License No. 1231 (which, as set forth above, was the license obtained by Mr. Wilkerson for the M I B TRAINING FACILITY and identified Mr. Wilkerson as CEO, but which was revoked as part of the October 23, 2012 Decision from the Director of BSIS concerning Defendant Aguilar);

    ii.   Private Patrol Operator ("PPO") License No. 14442 (which is the license owned by Mr. Wilkerson under M.I.B. Executive Protection and which

issued on January 2, 2002 and has continuously remained current and valid);

iii.   Private Investigator ("PI") License No. 26330 (which is the license owned by Mr. Wilkerson under The M.I.B. Group and which issued on March 27, 2009 and has continuously remained current and valid); and

iv.   Private Investigator ("PI") License No. 26316 (which is the license owned by Defendant Aguilar and which issued on March 13, 2009, but which was revoked by way of the October 23, 2012 Decision from the Director of BSIS, but later reinstated and is presently current).

49.   On July 18, 2023, Defendant Aguilar submitted application Serial No. 98/090,700 seeking to register the trademark MIB SECURITY GROUP with the U.S. Patent and Trademark Office for use in connection with "Consultancy services relating to private investigations; Personal security consultation; Physical security consultancy; Private investigation; Private investigation consultancy; Providing information in the field of self-defense; Security guard services; Security guard services using de-escalation tactics; Security guarding for facilities; Security services, namely, armed escorts and security personnel for commercial; Security services, namely, armed escorts and security personnel for private; Security services, namely, providing executive protection." Hereinafter "The '700 Application."

50.   In submitting The '700 Application, Defendant Aguilar's agent confirmed the details of the application in a declaration signed under oath and penalty of perjury. A true and correct copy of The '700 Application is attached as **Exhibit G**.

51.   Included with The '700 Application, Defendant Aguilar's agent included a screen capture showing the appearance of The Website as of Feb. 1, 2011.  A true and correct copy of the Feb. 1, 2011 screen capture is attached as **Exhibit H**.  The Website as displayed in Exhibit H confirms identification of License Nos. 1231, 14442, 26330 and 26316 as set forth above.  The Website displayed in Exhibit H also identifies Plaintiff's predecessors in interest MIB 220 Inc and MIB 2nd II None, Inc. as the owners of the website.

52.   On information and belief, Defendant Aguilar had a new website designed and

is now displaying the redesigned website at The Domain Name (hereinafter "The Re-Designed Website"). On The Re-Designed Website, Defendant Aguilar promotes security and training services and lists the following licenses: Private Patrol Operator ("PPO") License No. 121046 issued Dec. 22, 2020; Private Investigations ("PI") License No. 26316 issued March 13, 2009; and Training Firearms Facility ("TFF") License No. 1532  issued Feb. 24, 2017.  At the top of The Re-Designed Website, Defendant Aguilar prominently displays the trademark MIB SECURITY GROUP.

53.     Based upon the foregoing, Defendants have hijacked The Domain Name and are operating The Re-Designed website which displays one or more trademarks that are identical or confusingly similar to The MIB® Marks and are used by Defendants to promote services in competition with the services provided by Plaintiff under The MIB® Marks.

54.     Plaintiff has never licensed or authorized Defendants to use the MIB SECURITY GROUP mark or any other mark confusingly similar to The MIB® Marks. Plaintiff has not authorized Defendants to take ownership and control of The Domain Name or to use The Re-Designed Website.

55.     Defendants have been aware of Plaintiff's ownership of The MIB® Marks since 2008 when Defendant Aguilar first began working for Plaintiff.

56.     Plaintiff has communicated multiple verbal and written demands to Defendants to stop using marks infringing upon The MIB® Marks, including, without limitation on December 13, 2022, when Plaintiff sent correspondence to Defendants demanding that Defendants cease and desist use of marks confusingly similar to The MIB® Marks, including the Domain Name and The Re-Designed Website.

57.     Despite prior knowledge of Plaintiff's superior rights in and to The MIB® Marks, Defendants have persisted in their use of confusing similar marks, The Domain Name and The Re-Designed Website, all in violation of Plaintiff's rights in and to The MIB® Marks.

58.     Defendants' activities are likely to cause confusion, mistake, and deception as to the affiliation, connection, or association of Defendant with Plaintiff, and as to the origin, sponsorship, or approval of Defendants' services or commercial activities.



59.     By causing such a likelihood of confusion, mistake, and deception, Defendants are inflicting irreparable harm to the goodwill symbolized by The MIB® Marks owned by Plaintiff, for which Plaintiff has no adequate remedy at law.

60.     Plaintiff has been damaged and continues to be damaged by Defendants' unauthorized use of The MIB® Marks in the manner described herein.

61.     Unless these acts of Defendant are restrained by this Court, they will continue to cause irreparable injury to Plaintiff and to the public for which there is no adequate remedy at law.

## COUNT 1: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

62.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

63.     Plaintiff owns valid and enforceable U.S. trademark registrations for The MIB® Marks, as identified above.

64.     Defendants' use in commerce, including on The Website appearing at The Domain Name, without authorization from Plaintiff, of one or more marks similar to one of more of The MIB® Marks in connection with the promotion, offering for sale and sale of competing and related security and training services has caused actual confusion, deception, and mistake among the consuming public by creating the false and misleading impression that Defendants' are associated or connected with Plaintiff, or have the sponsorship, endorsement or approval of Plaintiff.

65.     Defendants' use in commerce, including on The Website appearing at The Domain Name, without authorization from Plaintiff, of one or more marks similar to one of more of The MIB® Marks in connection with the promotion, offering for sale and sale of competing and related security and training services is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' are associated or connected with Plaintiff, or have the sponsorship, endorsement or approval of Plaintiff.

66.     Defendants have used marks confusingly similar to The MIB® Marks in violation of 15 U.S.C. § 1114, and Defendants' activities have caused and, unless enjoined by



this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by The MIB® Marks, for which Plaintiff has no adequate remedy at law.

67.     Defendants' acts complained of herein have been deliberate, willful, and intentional, with full knowledge and in conscious disregard of Plaintiff's rights in and to The MIB® Marks with intent to injure and trade off Plaintiff's goodwill in The MIB® Marks and cause confusion and mistake among the consuming public. Defendants had actual knowledge of Plaintiff's ownership and prior use of The MIB® Marks, and have acted in willful violation of Plaintiff's rights. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with The MIB® Marks to Plaintiff's irreparable injury, all with malice and oppression, and, as such, this is an exceptional case.

68.     As a result of the foregoing alleged actions of Defendants, Defendants have been unjustly enriched and Plaintiff has been damaged and irreparably harmed.  Because Defendants have caused and are likely to continue causing injury to the public and irreparable injury to Plaintiff for which it has no adequate remedy at law, Plaintiff is entitled to injunctive relief and to recover Defendants' profits, Plaintiff's actual damages, trebled or enhanced profits and damages, costs of the action, and reasonable attorneys' fees all in an amount to be proven at trial and in excess of the jurisdictional minimum of this Court pursuant to 15 U.S.C. §§ 1114, 1116 and 1117, as well as an order requiring Defendants to transfer The Domain Name to Plaintiff.

## **COUNT II: FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125)**

69.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

70.     As set forth in detail above, Defendants' use of one or marks in connection with competing and related security and training services, including on The Website appearing at The Domain Name, is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with Plaintiff, or as to the origin, sponsorship, or

TKLG
THE KINDER LAW GROUP

approval of the services, or commercial activities by Defendants.

71.     Defendants' actions constitute a willful false designation of origin and misrepresentation in violation of 15 U.S.C. § 1125(a) with the intent to capitalize on Plaintiff's goodwill.

72.     If the acts of Defendants are allowed to continue, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law. Plaintiff is entitled to permanent injunctive relief to prevent such irreparable injury.

73.     Plaintiff is entitled to the recovery of damages from each Defendant in an amount to be proven at trial, but which amount exceeds the jurisdictional minimum of this Court. Damages include the actual damages sustained by Plaintiff, Defendants' profits, and the cost of the action together with Plaintiff's reasonable attorney's fees.

### COUNT III: COMMON LAW TRADEMARK INFRINGEMENT

74.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

75.     Since at least as early as 2002, Plaintiff has continuously used The MIB® Marks in connection with its security and training services.

76.     Defendants have used one or more marks on or in connection with the sale, offering for sale, distribution or advertising of security and training services, and related services provided by Defendants, through the operation of The Website located at The Domain Name in such a manner as is likely to cause confusion, mistake, or to deceive.

77.     Defendants' infringing activities have caused and are continuing to cause damage to Plaintiff.

78.     Defendants' activities have caused, and continue to cause, irreparable harm to Plaintiff's goodwill and reputation.

79.     Defendants' infringing activities constitute common law infringement of The MIB® Marks of Plaintiff.

80.     Defendants have been infringing and continue to infringe on The MIB® Marks with full knowledge of or at least willful and reckless disregard for Plaintiff's common law



COMPLAINT

15

rights and knowing that The MIB® Marks are associated exclusively with Plaintiff, despite the true name of Defendants' business being named MIB-Shield.

81.    Defendants' conduct is intentional, willful, wanton, and malicious, and is undertaken with intent to reap the benefit of Plaintiff's goodwill in The MIB® Marks.

82.    If the acts of Defendants are allowed to continue, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law. Plaintiff is entitled to permanent injunctive relief to prevent such irreparable injury.

83.    Plaintiff is entitled to the recovery of damages from Defendants in an amount to be determined at trial.

## COURT IV: VIOLATION OF 15 U.S.C. § 1125 (d) CYBER PIRACY

84.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

85.    Plaintiff filed an application with the USPTO to register the MIB Security Group trademark on 9/10/2021 and the MIB Group logo trademark on 9/10/2021.

86.    Plaintiff has been the owner of the domain www.mibsecuritygroup.com since the domain name was first registered on behalf of Plaintiff on or about November 25, 2008.

87.    Defendant Aguilar has misappropriated The Domain Name by causing the renewal to be done under his credit card knowing that The Domain Name belongs to Plaintiff.

88.    Defendants use, hijacking and control of The Domain Name are in bad faith and in violation of 15 U.S.C. § 1125(d) in that Defendants have demonstrated a bad faith intent to profit from registering, controlling, and using The Domain Name in connection with the sale of security and training services.

89.    Defendants' bad faith cyber piracy entitles Plaintiff to an order of the court directing forfeiture and/or cancellation of The Domain Name or the transfer of The Domain Name to Plaintiff.

90.    If the acts of Defendants are allowed to continue, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law. Plaintiff is entitled to permanent injunctive relief to prevent such irreparable injury.



COMPLAINT

91.     Plaintiff is entitled to the recovery of damages from each Defendant in an amount to be determined at trial. Damages include, the actual damages sustained by Plaintiff, Defendants' profits, and the costs of the action together with Plaintiff's reasonable attorneys' fees.

**COUNT V: VIOLATION OF THE COMMON LAW OF UNFAIR COMPETITION**

92.     Plaintiff incorporates by reference the preceding paragraphs as incorporated fully set forth herein.

93.     Through the acts and practices alleged above, Defendants have violated the common law of unfair competition, which has caused harm and damage to Plaintiff. Defendants continue to operate using the name of MIB Security Group for its Firearm Training Instructor license and Firearm Training Facility license when they are not legally registered with the State of California or BSIS as MIB Security Group, hoping to capitalize on the reputation, clout, goodwill and prestige of Plaintiff's rights in and to The MIB® Marks.

**COUNT VI: VIOLATION OF CALIFORNIA**

**BUSINESS AND PROFESSIONS CODE § 17500**

94.     Plaintiff incorporates by reference the preceding paragraphs as incorporated fully set forth herein.

95.     Defendants continue to operate using the name of MIB Security Group for its Firearm Training Instructor license and Firearm Training Facility license when they are not legally registered with the State of California or BSIS as MIB Security Group, hoping to capitalize on the reputation, clout, goodwill and prestige of Plaintiff's rights in and to The MIB® Marks.

96.     Through the business acts and practices alleged above, Plaintiff is informed and believes and therefore alleges that Defendants have engaged in acts and practices of false advertising by making misleading statements in connection with the sale of goods or services to the public within the State of California, in violation of California Business and Professions Code § 17500, which has caused irreparable injury to Plaintiff as alleged herein above.

TKLG
THE KINDER LAW GROUP

## COUNT VII: VIOLATION OF CALIFORNIA
## BUSINESS AND PROFESSIONS CODE § 17200

97.     Plaintiff incorporates by reference the preceding paragraphs as incorporated fully set forth herein.

98.     Defendants continue to operate using the name of MIB Security Group for Firearm Training Instructor license and Firearm Training Facility license when Defendants are not legally registered with the State of California or BSIS as MIB Security Group, - hoping to capitalize on the reputation, clout, goodwill and prestige of Plaintiff's rights in and to The MIB® Marks.

99.     Through the business acts and practices alleged above, Plaintiff is informed and believes and therefore alleges that Defendants have engaged in acts and practices of false advertising by making misleading statements in connection with the sale of goods or services to the public within the State of California, in violation of California Business and Professions Code § 17200, which has caused irreparable injury to Plaintiff as alleged herein above.

## PRAYER FOR RELIEF

100.    WHEREFORE, Plaintiff requests the following relief:

a.      For every cause of action for which such relief is allowed, an award of compensatory damages, punitive and exemplary damages, and disgorgement of Defendants' profits, as allowed by law;

b.      A finding and judgment that Defendants have violated (and continue to violate) 15 U.S.C. § 1125(a) by engaging in unfair competition and deceptive trade practices and an award of damages;

c.      A finding and judgment that Defendants have violated (and continue to violate) California Civil Code §§ 17200 and 17500 by engaging in false advertising and unfair competition;

d.      An injunction prohibiting Defendants from engaging in any further acts of unfair competition or deceptive trade practices;



1     e.     A finding and judgment that Defendants have infringed The MIB® Marks and

2 an award of damages and an injunction prohibiting any further infringement;

3     f.     A finding and judgment that Defendants have violated 15 U.S.C. § 1125(d) by

4 hijacking in bad faith the domain name www.mibsecuritygroup.com together with an award

5 of damages and a transfer of the domain name to Plaintiff;

6     g.     A finding and judgment that this case is exceptional;

7     h.     A finding that Defendants are jointly and severally liable for all amounts

8 awarded to Plaintiff;

9     i.     An award of attorneys' fees and costs;

10     j.     An award of prejudgment interest; and

11     k.     Such other and further relief as the Court may deem just and proper.

12

13                                Respectfully submitted,

14 Dated: August 9, 2023           THE KINDER LAW GROUP, APC

15

16                           By:   //s/

17                                 Brian P. Kinder, Esq.
                                Attorneys for Plaintiff

18

19 Dated: August 9, 2023           LAW OFFICES OF ORLANDO J.
                              CASTAÑO, JR., INC.

20

21                           By:   //s/

22                                 Orlando J. Castaño, Jr., Esq.
                                Attorneys for Plaintiff

23

24

25

26

27

28



COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

3      Pursuant to Fed. R. Civ. Proc. 38, Plaintiff demands a trial by jury on all claims and

4   issues triable to a jury in this action.

5

Respectfully submitted,

6

7   Dated: August 9, 2023            THE KINDER LAW GROUP, APC

8

9                                    By:   //s/
                                          Brian P. Kinder, Esq.
10                                        Attorneys for Plaintiff

11

12   Dated: August 9, 2023           LAW OFFICES OF ORLANDO J.
                                     CASTAÑO, JR., INC.
13

14                                   By:   //s/
                                          Orlando J. Castaño, Jr., Esq.
15                                        Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

20